UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

JERRY DARST,

       **Plaintiff,**

                        :

                                  Case No. 2:24-cv-1150

**v.**                             **Chief Judge Sarah D. Morrison**
                                  **Magistrate Judge Chelsey M.**
                                  **Vascura**

**MEIGS COUNTY, OHIO, *et al.*,**
                        :

       **Defendants.**

## <u>OPINION AND ORDER</u>

Jerry Darst's law enforcement career spanned nearly three decades. Most of that time was with the Gallia County, Ohio Sheriff's Office, where he worked for 25 years. After he was terminated from Gallia County, Mr. Darst took a job as a probationary deputy with the Meigs County, Ohio Sheriff's Office ("MCSO"). But just a few months into his one-year probationary period, Mr. Darst was injured and went out on leave, providing Meigs County Sheriff Scott Fitch minimal performance to evaluate. Defendants say the performance Sheriff Fitch and others in MCSO's leadership had observed during Mr. Darst's first few months was unsatisfactory, so Sheriff Fitch terminated him at the end of his probationary period.

Mr. Darst tells it differently. As a 51-year-old deputy when he began at MCSO, he claims he faced a culture permeated by ageist remarks and jokes, including from Sheriff Fitch. Believing his termination to be a result of ageist animus, Mr. Darst filed this lawsuit alleging age discrimination against Meigs

County and Sheriff Fitch. Defendants filed a Motion for Summary Judgment (ECF No. 42) on all claims. That Motion is fully briefed[1] and, for the reasons below, is **GRANTED**.

## I.     STATEMENT OF FACTS

### A.     Mr. Darst and Sheriff Fitch Start at MCSO

Mr. Darst started as a deputy with MCSO in August 2022. Three months later, Sheriff Fitch took over as MCSO's Sheriff. (Fitch Dep., ECF No. 39, PAGEID ## 460–61.) Sheriff Fitch inherited his role during a "stressful" and "trying time" for the department, after the previous sheriff (who was under investigation for misuse of county funds) resigned. (*Id.*, PAGEID # 494.)

Sheriff Fitch decided to "change the culture" at MCSO to make it "more proactive and less reactive." (Fitch Dep., PAGEID ## 489, 504.) To that end, he prioritized response time and asked deputies to patrol the county and be visible to the public rather than remain at the office. (*Id.*, PAGEID ## 489–491; Stewart Dep., ECF No. 41, PAGEID # 826.) He also sought to improve the quality of reports based on feedback from prosecutors, ensuring that reports were timely, thorough, and error-free. (Fitch Dep., PAGEID # 492.)

Mr. Darst did not seem receptive to Sheriff Fitch's vision for the department. (*Id.*, PAGEID # 504.) For example, leadership observed that Mr. Darst tended to "sit around and wait on a call as opposed to wanting to be out and be proactive" as

---

[1] Mr. Darst also filed a Motion for Leave to File a Sur-Reply (ECF No. 55). Finding no prejudice to Defendants in allowing Mr. Darst's Sur-Reply, that Motion is **GRANTED**.

directed. (*Id.*, PAGEID ## 503–04; Stewart Dep., PAGEID ## 768–69.) Sheriff Fitch also noticed that Mr. Darst's appearance lacked professionalism, both physically (his "uniform was never neat" and his "boots were dirty") and in the way he presented himself to the public (lacking confidence and knowledge of the law). (Fitch Dep., PAGEID ## 506, 519.) Mr. Darst's unkemptness extended to his county-issued cruiser, which Sheriff Fitch noticed was often "dirty," with "cups and chip bags and candy wrappers and things laying around" inside. (*Id.*, PAGEID ## 502–03.)

Although these recurrent deficiencies violated MCSO's Code of Conduct, Sheriff Fitch did not discipline Mr. Darst for any of these issues. (*Id.*, PAGEID # 514.) Sheriff Fitch generally preferred not to be "heavy-handed with discipline" and would coach employees to correct their behavior before resorting to formal discipline.[2] (*Id.*, PAGEID ## 495–96, 499–501.) The parties dispute whether Sheriff Fitch coached Mr. Darst on his performance or otherwise made Mr. Darst aware of these concerns.

## B.    Ageist Remarks

Between November and January 2023, Sheriff Fitch made three comments to Mr. Darst referencing Mr. Darst's age. The first comment occurred shortly before

---

[2] Indeed, Sheriff Fitch disciplined only two employees during Mr. Darst's employment. The first received a write-up for ongoing absenteeism and sick leave abuse that predated Sheriff Fitch's tenure. (Fitch Dep., PAGEID ## 496–500.) The second was demoted following an inappropriate relationship with a high school student. (30(b)(6) Dep., ECF No. 40, PAGEID ## 676–81.) Neither was a probationary employee.

Sheriff Fitch assumed his role at MCSO. (Darst Dep., ECF No. 37, PAGEID ## 176–77.) Mr. Darst asked Sheriff Fitch about working with his canine at MCSO, but Sheriff Fitch rejected this request. During that conversation, Sheriff Fitch said something to the effect of "isn't it about time for you to hang it up, old man," meaning it was time to "leave … that aspect" of his job behind. (*Id.*, PAGEID ## 127–28.) After Sheriff Fitch started, he twice referred to Mr. Darst as the "old colonel." (*Id.*, PAGEID ## 123–25.) Robert Fruth, who worked as a police officer for the Village of Pomeroy, corroborated Sheriff Fitch's "old colonel" remarks and testified that he also heard Sheriff Fitch refer to Mr. Darst as "grandpa" ("Grandpa did a good job on this one") and as "old-timer" (i.e., "old school" or an officer who had "different training").[3] (Fruth Dep., ECF No. 39, PAGEID ## 401–05.)

Fellow deputies, too, mocked Mr. Darst for his age. Indeed, deputies regularly referred to Mr. Darst as "pa" or "grandpa" and mocked him for being so old that he "had a stone tablet to write on" instead of a computer and needed "help crossing the street." (Darst Dep., PAGEID ## 130–34, 146.) Mr. Darst did not report the deputies' comments to Sheriff Fitch (*id.*, PAGEID # 133–34), nor did Sheriff Fitch overhear remarks about Mr. Darst's age (Fitch Dep., PAGEID # 544).

---

[3] Defendants attack Mr. Fruth's credibility by citing to evidence of various personal and legal matters that are irrelevant to Mr. Darst's claims. (*See* Reply, PAGEID # 1005.) The Court does not assess a witness's credibility in deciding a motion for summary judgment, so Defendants had no legitimate reason to publicly criticize Mr. Fruth's background in their briefing.

## C.    Injury Leave and End of Employment

In January 2023, Mr. Darst was injured and took leave that continued for several months. (Darst Dep., PAGEID ## 220–21.) This extended leave proved challenging for Sheriff Fitch because, like all new MCSO employees, Mr. Darst was a probationary employee. The probationary period allows MCSO to evaluate a new employee's work performance before the employee is entitled to the full benefit of the collective bargaining agreement ("CBA"). (*Id.*, PAGEID ## 215–16.) Pursuant to the CBA, the probationary period lasts one year, during which MCSO may remove the employee at any time without a right to appeal the removal. (CBA, ECF No. 39, Ex. 2, PAGEID ## 593–94.) Because Mr. Darst's leave continued for several months, Sheriff Fitch had only 34 days of performance to evaluate. (Fitch Dep., PAGEID # 475.)

What Sheriff Fitch observed during that limited time gave him pause, so he sought the input of those more familiar with Mr. Darst's performance before deciding whether to retain Mr. Darst. He talked to Mr. Darst's previous employer, Gallia County Sheriff Matt Champlin, who expressed that Mr. Darst was a "horrible employee." (Fitch Dep., PAGEID # 481.) He also consulted other MCSO supervisors about their opinion of Mr. Darst's work performance; their responses were uniformly negative. (*Id.*, PAGEID ## 469–74; Stewart Dep., PAGEID # 772.) While the supervisors' individual experiences and familiarity with Mr. Darst differed, the consensus was that his reports were untimely and poorly written, he had a bad attitude and work ethic, and his appearance was "sloppy" and unprofessional. (Fitch Dep., PAGEID ## 470–73; Stewart Dep., PAGEID ## 772–75.) These persistent

5

deficiencies were counter to Sheriff Fitch's expected performance of a deputy, who must respond to calls in a timely manner, complete reports "thoroughly and accurately, grammatically and stylistically correct," appear professional, and be proactive. (Fitch Dep., PAGEID ## 487–88.) Everyone agreed that Mr. Darst was not "worthy to make probation and should not be retained as a deputy sheriff" with MCSO. (Fitch Dep., PAGEID # 486.)

Although every individual with whom Sheriff Fitch spoke confirmed his impression, he was wary of terminating Mr. Darst without a fuller evaluation record. Sheriff Fitch asked MCSO Union Representative Lt. Rick Smith to speak with Mr. Darst about extending his probationary period to allow more time to evaluate his performance. (Fitch Dep., PAGEID # 475; Stewart Dep., PAGEID # 776; Smith Decl., ECF No. 42-2, ¶¶ 15–16.) The parties dispute whether Lt. Smith actually spoke with Mr. Darst about extending his probationary period. Nevertheless, Lt. Smith informed Sheriff Fitch that he did, but that Mr. Darst declined to extend his probation. (Smith Decl., ¶¶ 15–17; Fitch Dep., PAGEID ## 475–76; Stewart Dep., PAGEID # 777.)

### D. Termination

Because Mr. Darst consistently exhibited a constellation of deficiencies, Sheriff Fitch and others believed he "failed to make the satisfactory grades for making probation." (Fitch Dep., PAGEID # 465.) Thus, Sheriff Fitch terminated Mr. Darst with one month remaining in his probationary period. (*Id.*, PAGEID # 529.) Sheriff Fitch communicated his decision to Mr. Darst in a letter:

6

> According to MCSO records it indicates that you have only worked 97 days as of this time during your probationary period to be evaluated. Having limited performance to evaluate is difficult and to compound it most of your days worked were prior to me being appointed as Sheriff. Therefore, I must rely on current supervisors and employees for an accurate evaluation.
>
> In discussing your work performance with staff that worked with you during your time at MCSO it was reported that your work performance was unsatisfactory. Some of the deficiencies listed were dependability, professionalism, lack of motivation, poor attitude, timeliness of reports and uniform appearance.
>
> I appreciate your time at MCSO but based off the evaluation of your work performance while employed at the MCSO during your probationary period, I am terminating your employment with the MCSO, effective immediately.

(ECF No. 49-3, PAGEID # 970.) One week later, MCSO hired another probationary deputy who was 35 years old.

Mr. Darst initiated this lawsuit asserting four claims:

- <u>Count I:</u> Age Discrimination (Age Discrimination in Employment Act) against Meigs County

- <u>Count II:</u> Age Discrimination (42 U.S.C. § 1983) against Sheriff Fitch

- <u>Count III:</u> Age Discrimination (Ohio Rev. Code §§ 4112 *et seq.*) against Meigs County

- <u>Count IV:</u> Aiding and Abetting Unlawful Discrimination (Ohio Rev. Code § 4112.02(J)) against Sheriff Fitch

Defendants move for summary judgment on all claims.

## II.  EVIDENTIARY OBJECTIONS

All evidence relied upon in a motion for summary judgment must be admissible at trial. *Villegas v. Metro. Gov't of Nashville*, 709 F.3d 563, 576 n.7 (6th

Cir. 2013). A party may object to material cited in a motion for summary judgment if the material "cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2).

The parties raise several evidentiary objections in their briefing. Because many of these objections relate to evidence that is not material to the Court's analysis, only objections to evidence relied on by the Court will be addressed.

### A.     Prior Employment Evidence

Mr. Darst asks the Court to disregard evidence relating to his employment with the Gallia County Sheriff's Office under Federal Rule of Evidence 404. (Opp., PAGEID # 951.)

Rule 404 prohibits evidence of a person's character or character trait "to prove that on a particular occasion the person acted in accordance with the character or trait." Fed. R. Evid. 404(a)(1). That Rule also provides that evidence of "any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). Evidence of a plaintiff's misconduct with another employer used to prove a propensity to engage in misconduct falls within the scope of Rule 404's prohibition. *Tisdale v. Fed. Exp. Corp.*, 415 F.3d 516, 537 (6th Cir. 2005).

Defendants cite documents relating to Mr. Darst's termination from the Gallia County Sheriff's Office for "conduct that is virtually identical to issues that he exhibited while at" MCSO to show that his "conduct during his tenure at both Sheriff's Offices remained consistent" – and thus warranted termination. (Mot.,

8

PAGEID # 869.) They argue that Mr. Darst's objection to this prior employment evidence is a "misdirection" because (1) Sheriff Fitch relied on Sheriff Champlin's comments about Mr. Darst's employment with Gallia County when evaluating whether to terminate him; (2) Mr. Darst's "gross misconduct" was the subject of decisions from an arbitrator and the Gallia County Common Pleas Court, which are subject to judicial notice under Rule 201(b); and (3) Mr. Darst relies on the positive aspects of his employment with Gallia County as material facts and cannot "selectively" invoke Rule 404. (Reply, PAGEID # 1006–08.)

Using documents regarding Mr. Darst's misconduct and poor performance with his prior employer to prove that he acted consistently with a tendency to exhibit misconduct and poor performance at MCSO falls squarely within Rule 404's prohibition. It is irrelevant that documents referencing the alleged misconduct are subject to judicial notice because public records must still be admissible for the purpose for which Defendants offer them. Nor is there any evidence that Sheriff Fitch relied on these documents when deciding whether to terminate Mr. Darst, so whether the documents corroborate Sheriff Champlin's comments to Sheriff Fitch is immaterial at summary judgment.

By the same token, Mr. Darst cannot rely on evidence about his prior positive performance with Gallia County to prove that his work at MCSO was as "strong as it had been for [his] thirty years in law enforcement" (Darst Decl., ECF No. 49-1, ¶ 15) and therefore his termination for poor performance must have been false. *See In re Davol, Inc./C.R. Bard, Inc.*, 512 F. Supp. 3d 803, 811 (S.D. Ohio 2021)

("[C]haracter or propensity evidence may be of bad or good character; Rule 404 makes no distinction.") (Sargus, J.). Mr. Darst's prior employment (positive or negative) is immaterial to his claims regarding his termination from MCSO, so the Court does not consider it.

That said, Defendants may cite the information provided by Sheriff Champlin to Sheriff Fitch to support Sheriff Fitch's reliance on that opinion when deciding whether to retain Mr. Darst. While Sheriff Champlin's comments reference Mr. Darst's unsatisfactory performance with Gallia County, those comments are admissible evidence as to the basis for Sheriff Fitch's decision to terminate Mr. Darst. Mr. Darst does not argue that Sheriff Fitch's testimony regarding his conversation with Sheriff Champlin is not admissible for this purpose.

The Court will disregard the parties' evidence regarding Mr. Darst's employment with Gallia County except for Sheriff Fitch's testimony about Sheriff Champlin's comments and his reliance on those comments.

### B.  Declaration of Rick Smith

Mr. Darst argues that the Court should disregard Lt. Smith's declaration because MCSO did not disclose him as a witness. (Opp., PAGEID # 952.) Should the Court consider Lt. Smith's declaration, Mr. Darst argues that portions of his declaration should be excluded because they are inadmissible. (*Id.*)

#### 1.  Failure to Disclose Lt. Smith

Rule 26 requires parties to make certain mandatory disclosures during the initial stages of litigation. Thereafter, a party "must supplement or correct its

10

disclosure ... in a timely manner if the party learns that in some material respect the disclosure ... is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1)(A). There is no duty to supplement a Rule 26 disclosure if the information "has been otherwise made known to the parties in writing or during the discovery process, as when a witness not previously disclosed is identified during the taking of a deposition." Fed. R. Civ. P. 26(e) advisory committee's note (1993). While "[t]he mere mentioning of a potential witness's name … is insufficient [to] demonstrate that the opposing party knew the party who failed to disclose the witness might call that person to testify at trial," a party is relieved of the duty to disclose "when a party has good reason [to] know that a person has knowledge supporting the opposing party's litigation position." *Sjostrand v. Ohio State Univ.*, No. 2:11-CV-00462, 2014 WL 4417767, at *2 (S.D. Ohio Sept. 8, 2014) (Abel, M.J.).

Defendants did not expressly identify Lt. Smith as a potential witness in their initial disclosures. (Reply, PAGEID ## 1003–04.) Even so, Defendants had no duty to supplement their disclosures to include Lt. Smith because discovery otherwise made clear that he had personal knowledge regarding the matters included in his declaration. During depositions, both Sheriff Fitch and Cpt. Frank Stewart testified about Lt. Smith's involvement in Mr. Darst's termination and their understanding that Lt. Smith spoke with Mr. Darst about extending his probationary period. (Fitch Dep., PAGEID ## 474–76, 532–33; Stewart Dep.,

PAGEID ## 776–77, 782–84.) Their testimony sufficiently placed Mr. Darst on notice that Defendants could use Lt. Smith as a witness on the subject of Mr. Darst's job performance, his termination, and the offer to extend his probationary period. These same topics form the basis of Lt. Smith's declaration. (Smith Decl., PAGEID # 898–90.) Thus, Defendants did not violate Rule 26(e) with respect to Lt. Smith.

### 2. Admissibility of Declaration

Rule 56(c)(4) requires that a declaration used to support or oppose a motion "be made on personal knowledge" and "set out facts that would be admissible in evidence." Fed. R. Civ. P. 56(c)(4). Any portion of an affidavit that violates Rule 56 should be disregarded. *Reed v. City of Memphis, Tennessee*, 735 F. App'x 192, 197 (6th Cir. 2018). "In order for inferences, thoughts, and opinions to be properly included in a Rule 56 affidavit, they must be premised on firsthand observations or personal experience, and established by specific facts." *Giles v. Univ. of Toledo*, 241 F.R.D. 466, 469 (N.D. Ohio 2007). A court should "use a scalpel, not a butcher knife" and disregard only those portions of the affidavit that are inadmissible. *Id.* at 469.

Mr. Darst first objects to Lt. Smith's statement in Paragraph 8 because he argues it "does not testify to specific facts" and is therefore "inadmissible as conclusory[.]" (Opp., PAGEID # 952.) In Paragraph 8, Lt. Smith states that Mr. Darst "had problems and issues with his employment, including causing several issues within the union[.]" While this statement might lack specific details, it clearly sets forth factual observations of which Lt. Smith has personal knowledge

12

and therefore complies with Rule 56. *See Bailey v. USF Holland, Inc.*, 444 F. Supp. 2d 831, 845 (M.D. Tenn. 2006) ("Rule 56(e) requires only that 'affidavits shall be made on personal knowledge,' not that an affiant must provide every conceivable detail on the subject at issue.") (citation omitted). Even if this statement were conclusory, Mr. Darst cites no authority suggesting that conclusory statements in a declaration are inadmissible as opposed to insufficient as evidence to support summary judgment. *See Alexander v. CareSource*, 576 F.3d 551, 560 (6th Cir. 2009) ("Conclusory statements unadorned with supporting facts are insufficient to establish a factual dispute that will defeat summary judgment."). Mr. Darst's objection to Paragraph 8 is overruled.

Conversely, Lt. Smith lacks sufficient personal knowledge regarding the facts underlying his statements in Paragraphs 14 and 18. In Paragraph 14, Lt. Smith states:

> I later learned that Jerry Darst had been told that Sheriff Fitch wanted to extend his probationary period to further evaluate Darst's performance as a Deputy and that was why Darst had texted me out of the blue with questions about extending his probationary period.

(Smith Decl., ¶ 14.) However, Lt. Smith does not state how he learned that Mr. Darst "had been told" about the probation extension or how he reached his conclusion that Mr. Darst texted him for that reason. Paragraph 18 lacks a basis for Lt. Smith's belief that "Mark Volcheck even drafted a potential memorandum of understanding memorializing the extension of the probationary period[.]" (*Id.*, ¶ 18.) It is not clear that the statements were made on personal knowledge rather than assumptions and speculation. The Court will disregard Paragraphs 14 and 18.

13

Finally, Mr. Darst objects to Paragraphs 15 through 17 because he argues Lt. Smith's statements are based on hearsay. Hearsay is a statement made by a declarant outside the trial or hearing that is offered to prove the truth of the matter asserted in the statement. Fed. R. Evid. 801(c). Courts cannot consider inadmissible hearsay when reviewing a motion for summary judgment. *N. Am. Specialty Ins. Co. v. Myers*, 111 F.3d 1273, 1283 (6th Cir. 1997).

In Paragraphs 15 and 16, Lt. Smith states that Sheriff Fitch asked him "to find out whether Jerry Darst would voluntarily extend his probationary period" because "Sheriff Fitch explained to [him] that he had not had time to evaluate" Mr. Darst's performance. (Smith Decl., ¶¶ 15–16.) Mr. Darst argues that these statements are "offered for the truth of those matters," but he does not identify what truth value these statements have. Assuming Mr. Darst means that the statements are offered to prove that Sheriff Fitch asked Lt. Smith to speak to Mr. Darst about the probation extension and explained his reason for the request, that is not hearsay. *United States v. Rodriguez-Lopez*, 565 F.3d 312, 314 (6th Cir. 2009) ("A statement offered as evidence of the bare fact that it was said, rather than for its truth, is not hearsay."). Moreover, requests are not assertive speech that can be true or false, *see id.*, and explanations as to the speaker's motive for the request are admissible under Rule 803(3)'s state-of-mind exception, *see United States v. Kilpatrick*, 798 F.3d 365, 386 (6th Cir. 2015). These statements are admissible as context for Lt. Smith's assertion in Paragraph 17 that he spoke with Mr. Darst and Mark Volcheck about the probation extension after his meeting with Sheriff Fitch.

14

*See United States v. Churn*, 800 F.3d 768, 776 (6th Cir. 2015) (statements are admissible "to show why the listener acted" as he did). And Paragraph 17 is not hearsay because it includes no statement and merely asserts that a conversation occurred.

Mr. Darst's objection to Paragraphs 14 and 18 are sustained and the Court will disregard those paragraphs. Mr. Darst's remaining objections to Lt. Smith's declaration are overruled.

## III.    MOTION FOR SUMMARY JUDGMENT

### A.    Legal Standard

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant has the burden of establishing there are no genuine issues of material fact, which may be achieved by demonstrating the nonmoving party lacks evidence to support an essential element of its claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Barnhart v. Pickrel, Schaeffer & Ebeling Co.*, 12 F.3d 1382, 1388–89 (6th Cir. 1993). The burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56). When evaluating a motion for summary judgment, the evidence must be viewed in the light most favorable to the non-moving party.

A genuine issue exists if the nonmoving party can present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos.*, 8 F.3d 335, 339–40 (6th Cir.

15

1993). In other words, "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248; *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (concluding that summary judgment is appropriate when the evidence could not lead the trier of fact to find for the non-moving party).

## B.    Analysis

Mr. Darst asserts claims for age discrimination under the ADEA, 42 U.S.C. § 1983, and Ohio Rev. Code §§ 4112 *et seq*. He also asserts a claim of aiding and abetting unlawful discrimination against Sheriff Fitch, which is derivative of his age-discrimination claims. Because the success of Mr. Darst's aiding and abetting claim depends on successfully raising a genuine dispute as to his age-discrimination claims, the Court begins and ends its analysis with those claims. *See Romano v. Hudson City Sch. District*, 772 F. App'x 258, 268 n. 10 (6th Cir. 2019) (claim for aiding and abetting in discrimination cannot survive summary judgment without a predicate finding of discrimination).

Age-discrimination claims under the ADEA, § 1983, and Ohio law are analytically similar, so the Court analyzes them together. [4] *See Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 357 (6th Cir. 1998) ("Under Ohio law,

---

[4] Defendants argue that the ADEA preempts Mr. Darst's age discrimination claim under § 1983. However, the Sixth Circuit has not expressly decided this issue. *Hieber v. Oakland Cty., Mich.*, 136 F.4th 308, 330 (6th Cir. 2025) (collecting cases). Because Mr. Darst fails to create a genuine dispute to survive summary judgment on his age-discrimination claims, the Court need not decide whether his § 1983 claim is preempted.

the elements and burden of proof in a state age-discrimination claim parallel the ADEA analysis."); *Arendale v. City of Memphis*, 519 F.3d 587, 603 (6th Cir. 2008) ("In weighing an employment discrimination claim asserting disparate treatment under § 1983, this Court applies the familiar *McDonnell Douglas* framework applicable in similar cases …."). To succeed on an age-discrimination claim, a plaintiff must show that age was the "but-for" cause of an adverse employment decision. *McNeal v. City of Blue Ash, Ohio*, 117 F.4th 887, 894 (6th Cir. 2024) (citation omitted). "Meeting [this] requirement is 'no simple task' because it requires plaintiffs to show that age was the 'determinative reason' they were terminated." *Id.* (citation omitted).

A plaintiff may demonstrate an age-discrimination claim through either direct or circumstantial evidence. *Pelcha v. MW Bancorp, Inc.*, 988 F.3d 318, 324 (6th Cir. 2021). Regardless of the method, the evidence presented "must be sufficiently probative to allow a factfinder to believe that the employer intentionally discriminated against the plaintiff because of age." *Id.* at 325 (citation omitted).

### 1. Direct Evidence

Direct evidence is evidence that, if believed, requires the conclusion that age was the determinative factor for the plaintiff's termination. *Alberty v. Columbus Twp.*, 730 F. App'x 352, 356 (6th Cir. 2018). "Only the most blatant remarks, whose intent could be nothing other than to discriminate on the basis of age, satisfy this criteria." *Sharp v. Aker Plant Servs. Grp., Inc.*, 726 F.3d 789, 798 (6th Cir. 2013) (citation modified). When evaluating whether discriminatory remarks serve as

direct evidence, courts consider whether the remark was (1) made by a decision-maker; (2) related to the decisionmaking process; (3) more than merely vague, ambiguous, or isolated; and (4) made proximate in time to the termination. *Pelcha*, 988 F.3d at 325 (citation omitted).

Mr. Darst argues that Sheriff Fitch's remarks are direct evidence of age discrimination. They are not. True, Sheriff Fitch was the decisionmaker. But his remarks do not require the conclusion that he terminated Mr. Darst because of his age. First, Sheriff Fitch referred to Mr. Darst as "old colonel," "grandpa," and "old timer" only a handful of times, long before his termination, and never in the context of a negative statement about Mr. Darst or his performance. *See Pelcha*, 988 F.3d at 326 (comments made six months before termination "temporally distant" and not direct evidence); *Rowan v. Lockheed Martin Energy Sys., Inc.*, 360 F.3d 544, 550 (6th Cir. 2004) (regularly referring to plaintiffs as "old farts" was not direct evidence because the references were not made in relation to the termination decision). Sheriff Fitch's statement to Mr. Darst that it was "time to hang it up, old man" is a closer call, but Mr. Darst testified that the statement was made in response to his request to work with his canine and referred to it being time to "leave … that aspect" of his job behind. (Darst Dep., PAGEID ## 127–28.) By Mr. Darst's own account, this statement (made seven months before he was terminated) does not unambiguously require the conclusion that that Defendants terminated Mr. Darst because of his age. Thus, an inference is required to determine that an age-based bias guided Sheriff Fitch's decision to terminate him.

### 2. Circumstantial Evidence

Claims based on indirect evidence of age discrimination are evaluated using the *McDonnell Douglas* burden-shifting framework. *Miles v. S. Cent. Human Res. Agency, Inc.*, 946 F.3d 883, 887 (6th Cir. 2020). First, the plaintiff must establish a prima facie case of discrimination. *Id.* To do so, he must demonstrate that he (1) was older than forty years old; (2) suffered an adverse employment action; (3) was qualified for his position; and (4) was replaced by a younger employee or similarly situated younger employees were treated more favorably. *McNeal*, 117 F.4th at 895. If the plaintiff establishes a prima facie case, the burden shifts to the defendant to produce a legitimate, nondiscriminatory reason for the adverse action. *Id.* The burden then shifts back to the plaintiff to demonstrate that the proffered reason is pretext for age discrimination. *Id.* To survive summary judgment, the plaintiff must produce sufficient evidence from which a jury could reasonably reject the employer's explanation for terminating him and infer that discrimination was the true reason for the decision. *Willard v. Huntington Ford, Inc.*, 952 F.3d 795, 807 (6th Cir. 2020). The guiding question is "did the employer fire the employee for the stated reason or not?" *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 n.4 (6th Cir. 2009).

Mr. Darst has met his burden to demonstrate a prima facie case. Defendants do not dispute that he has established the first three elements, and his replacement by someone 17 years younger than him is sufficient to meet the fourth prong. *Grosjean v. First Energy Corp.*, 349 F.3d 332, 336 (6th Cir. 2003).

19

Defendants have similarly met their burden to articulate a legitimate, nondiscriminatory reason for terminating Mr. Darst based on his unsatisfactory performance during his probationary period. *See Imwalle v. Reliance Med. Prod., Inc.*, 515 F.3d 531, 546 (6th Cir. 2008) ("Poor performance is a legitimate, nondiscriminatory reason for terminating a person's employment[.]"). Thus, the burden shifts back to Mr. Darst to demonstrate that Defendants' proffered reasons are "only a pretext to conceal that the true motive for [his] firing was [his] age." *Pelcha*, 988 F.3d at 326.

A plaintiff typically shows pretext by demonstrating that the proffered reasons (1) had no basis in fact, (2) did not actually motivate the employer's action, or (3) were insufficient to motivate the employer's action. *Miles*, 946 F.3d at 888. However, a plaintiff is not limited to these three categories and may put forth other "evidence from which a reasonable jury could conclude that the proffered reason is actually a pretext for unlawful discrimination." *Willard v. Huntington Ford, Inc.*, 952 F.3d 795, 807 (6th Cir. 2020) (citation omitted).

Mr. Darst offers seven reasons that he argues show pretext: (1) ageist remarks by Sheriff Fitch and other deputies; (2) Defendants' failure to follow their progressive disciplinary policy; (3) the lack of documentation regarding his poor performance; (4) Defendants' shifting justifications for his termination; (5) Sheriff Fitch's denial of knowledge of Mr. Darst's age; (6) Mr. Darst's denial of poor performance; and (7) Defendants' failure to discipline younger deputies for comparable performance issues. The Court will address these reasons out of order,

20

but none is sufficient to raise a genuine dispute as to Defendants' nondiscriminatory reasons for his termination.

### a.     Denial of Knowledge

Mr. Darst argues that Sheriff Fitch "disingenuously denied knowledge of Mr. Darst's age" in his deposition, which he argues supports a finding of pretext. (Opp., PAGEID # 945.) The Court can quickly dispose of this argument because Sheriff Fitch did not deny knowledge of Mr. Darst's age. Sheriff Fitch testified that he was "not exactly" sure of Mr. Darst's age, but he estimated that Mr. Darst was in his fifties. (Fitch Dep., PAGEID # 536.) Mr. Darst is, indeed, in his fifties. No jury could infer pretext from a supervisor accurately estimating a former employee's age in a deposition.

### b.     Shifting Justifications

According to Mr. Darst, Defendants raised two "shifting justifications" for his termination in their Motion that were not included among their contemporaneously stated reasons: (1) Mr. Darst's refusal to extend his probationary period; and (2) his prior employment with Gallia County. (Opp., PAGEID # 944–45.) This argument likewise mischaracterizes the record and Defendants' Motion.

As to the former, Defendants did not identify Mr. Darst's purported refusal to extend his probationary period as a basis for his termination. Rather, Defendants argue that Mr. Darst was "offered an opportunity to remain employed and rectify his unsatisfactory work performance" despite Sheriff Fitch's decision not to retain him. (*See* Mot., PAGEID ## 876, 878.) Defendants present the probation extension

21

as additional evidence supporting a lack of pretext, not as a reason for Mr. Darst's termination.

As to the latter, Sheriff Fitch testified that he considered Sheriff Champlin's opinion regarding Mr. Darst's work performance when evaluating his probationary status. (Fitch Dep., PAGEID # 481.) Defendants identified Sheriff Fitch's reliance on Sheriff Champlin's opinion in their Motion. (Mot., PAGEID ## 868–69.) Mr. Darst contends this represents a "shifting justification" because, "in a moment of inconsistency," Sheriff Fitch "testified that he did not rely on Sheriff Champlin's comments for the termination decision." (Opp., PAGEID # 945.) But the portion of Sheriff Fitch's testimony cited by Mr. Darst says no such thing:

> Q: Now, you said when you spoke to Matt Champlin, the Gallia County Sheriff, he said something about Jerry suing everybody?
>
> A: Something about Jerry being – filing frivolous lawsuits. Something to that effect, yes, sir.
>
> Q: Can you elaborate on what was discussed concerning that topic?
>
> A: I don't know if Matt gave me specifics or not. He just basically said that Jerry was very sue happy, something to that effect.
>
> Q: Did you take that into consideration when you were deciding whether to fire Jerry Darst?
>
> A: No.

(Fitch Dep., PAGEID # 484–85.)

The record does not support Mr. Darst's portrayal of these reasons as shifting justification.

22

### c.     Failure to Follow Progressive Disciplinary Policy

An "employer's failure to follow self-imposed regulations or procedures is generally insufficient to support a finding of pretext." *Miles*, 946 F.3d at 896 (citation omitted). However, the "failure to uniformly apply a progressive discipline policy can be evidence of pretext, especially when the [employer] asserts that policy as a rationale for the employee's termination." *Id.*

Mr. Darst argues that Sheriff Fitch conceded that his performance deficiencies would have warranted discipline under the Code of Conduct, so Defendants' failure to apply progressive discipline before terminating him demonstrates pretext. (Opp., PAGEID # 943.) But there is no evidence Defendants applied their disciplinary policy to Mr. Darst differently than other employees. Nor did Defendants cite their disciplinary policy as a basis for Mr. Darst's termination.

Mr. Darst conflates a probationary employee's termination for unsatisfactory performance with discipline. But the CBA contemplates that a probationary employee may be removed at any time regardless of whether the employee was previously disciplined or if his poor performance warranted discipline. (CBA, PAGEID # 594; *see also* Fitch Dep., PAGEID ## 524–32 ("[P]rogressive discipline, in my opinion, is different with a probationary officer.").) Thus, the failure to discipline Mr. Darst prior to his termination does not demonstrate pretext. *See Turner v. Marathon Petroleum Co., LP*, 804 F. App'x 375, 378 (6th Cir. 2020) (no pretext where plaintiff was a probationary employee, so defendant "could have fired him

23

immediately without the progressive discipline that applied to non-probationary employees under the company's collective-bargaining agreement").

### d. Failure to Document Performance

An employer's "failure to document" performance concerns "contemporaneously does not necessarily give rise to an inference of pretext." *Kovacevic v. Am. Int'l Food*s, No. 22-1675, 2023 WL 3756063, at \*6 (6th Cir. Jun. 1, 2023). But the lack of documentation corroborating the reasons for the termination can show pretext in some circumstances. *See Cutcher v. Kmart Corp.*, 364 F. App'x 183, 191 (6th Cir. 2010) ("the lack of documentation to corroborate" plaintiff's termination for a poor evaluation could support pretext when her prior performance reviews were positive and there was no evidence of a change in performance). Courts are "skeptical of undocumented accounts" of poor performance because the employer may have created the stated reasons post-termination for the purpose of litigation. *Abdulnour v. Campbell Soup Supply Co., LLC*, 502 F.3d 496, 503 (6th Cir. 2007). This concern is alleviated where the record otherwise supports the employer's justifications for its decision. *Id.*

Although there is no documentation regarding the quality of Mr. Darst's work beyond his termination letter, Sheriff Fitch testified that this was due to MCSO's lack of an internal system to record a probationary employee's performance. (Fitch Dep., PAGEID ## 494–95.) Worse for Mr. Darst's argument, he identifies no reason to suspect that the basis for his termination was dubious or a post-hoc strategy adopted for litigation (e.g., no documented prior positive performance or

24

documentation of other employees' probationary performance). A lack of documentation raises a genuine dispute as to pretext when the evidence suggests the employer created or changed its justification after litigation, not solely based on a lack of contemporaneous documentation. *Cf. Williams v. AT&T Mobility Services LLC*, 847 F.3d 384, 397–98 (6th Cir. 2017). Here, the only contemporaneous documentation regarding his performance (the termination letter) is consistent with Sheriff Fitch's and Cpt. Stewart's testimony and Defendants' proffered reason for termination. Put simply, this case does not present one of the limited circumstances where a lack of documentation is indicative of pretext.

### e.   Dispute Regarding Poor Performance

A plaintiff may show pretext by providing evidence that the employer's stated reason for his termination had no basis in fact. *Pelcha*, 988 F.3d at 326–27 (citation omitted). Under this method of demonstrating pretext, "the question is always whether the employer made up its stated reason to conceal intentional discrimination." *Id.* (citation modified).

To rebut his termination for unsatisfactory performance, Mr. Darst points to his declaration, in which he states that he "never had a poor or inappropriate appearance," "never had a poor work ethic," and "never exhibited a lack of professionalism[.]" (Darst Decl., PAGEID # 959.) "But an employee's 'subjective view of [his]' job performance is not enough to establish pretext." *Okakpu-Mbah v. Postmaster Gen. of the U.S.*, No. 21-2811, 2022 WL 3928534, at *4 (6th Cir. Aug. 31, 2022) (quoting *Hendrick v. W. Rsrv. Care Sys.*, 355 F.3d 444, 462 (6th Cir. 2004)).

25

Nor can an employee's "unsupported testimony" about his performance create a genuine dispute of fact to survive summary judgment. *EEOC v. Ford Motor Co.*, 782 F.3d 753, 763–64 (6th Cir. 2015). Mr. Darst's own opinion about his performance – which addresses some, but not all, of the reasons for his termination – does not, on its own, undermine the reasons for which Defendants terminated him.

Even if Mr. Darst's subjective view of his performance were enough to demonstrate a genuine dispute over the factual basis of his termination, more is required to demonstrate pretext. This is because a plaintiff disputing the facts upon which his termination was based must also point to evidence that the employer did not "honestly believe" in the proffered reason for his termination. *Braithwaite v. Timken Co.*, 258 F.3d 488, 493–94 (6th Cir. 2001). "When an employer reasonably and honestly relies on particularized facts in making an employment decision, it is entitled to summary judgment on pretext even if its conclusion is later shown to be 'mistaken, foolish, trivial, or baseless.'" *Chen*, 580 F.3d at 401 (citation omitted).

Mr. Darst has provided no evidence that Defendants did not honestly believe that his performance was unsatisfactory. Instead, he argues that the honest belief defense does not apply because (1) Sheriff Fitch relied on his own personal observations rather than information provided by others when deciding to terminate Mr. Darst; and (2) Defendants did not make a reasonably informed decision because they did not contact Mr. Darst for "his side of the story." A cursory review of the record and case law reveals that these arguments lack merit. An employer is not required to ask an employee for "his side of the story" for the honest

26

belief rule to apply. *See Seeger v. Cincinnati Bell Tel. Co., LLC*, 681 F.3d 274, 286 (6th Cir. 2012) ("[A]n 'optimal' investigation – i.e., interviewing the employee and some or all of his witnesses – is not a prerequisite to application of the honest belief rule."). Nor is the rule inapplicable when the decisionmaker relied on personal observations. *Tibbs v. Calvary United Methodist Church*, 505 F. App'x 508, 514 (6th Cir. 2012) (honest belief rule applied where supervisor "personally observed behavior she believed was insubordinate" and consulted with others to obtain permission to terminate plaintiff).

Mr. Darst has failed to put forth evidence undermining the factual basis of his termination.

### f.      Failure to Discipline Younger Employees

Pretext may be inferred through evidence that the employer did not discipline or terminate similarly situated employees outside the protected class "even though they were engaged in substantially identical conduct to that which the employer contends motivated" the plaintiff's termination. *Blizzard v. Marion Technical Coll.*, 698 F.3d 275, 286–87 (6th Cir. 2012) (citation modified). In evaluating whether other employees are similarly situated, courts consider whether the comparators dealt with the same supervisor, were subject to the same standards, and engaged in the same conduct "without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Ercegovich*, 154 F.3d at 352 (citation omitted). "The

27

plaintiff need not demonstrate an exact correlation with the employee receiving more favorable treatment," but they must be similar in all relevant aspects. *Id.*

Mr. Darst argues that Defendants treated younger day-shift deputies more favorably than him because those deputies were "criticized for having untidy uniforms, untidy police cruisers, or issues with their written reports" but were not disciplined. (Opp., PAGEID # 946.) But terminating a probationary employee for unsatisfactory performance is not equivalent to disciplining an employee, so Defendants' decision not to discipline Mr. Darst or other deputies for performance issues says nothing of its motivation to terminate Mr. Darst. And because Mr. Darst was terminated for unsatisfactory performance during his probationary period, only other probationary employees are relevant comparators. *See Cooper v. City of N. Olmstead*, 795 F.2d 1265, 1270–71 (6th Cir. 1986) ("A probationary period of employment permits a company to weed out or eliminate undesirable employees," such that probationary employees "do not stand on equal footing" with permanent employees "and cannot be considered similarly situated"). Neither Mr. Darst nor Defendants identify whether the other day-shift deputies were probationary, but even assuming some were, there is no evidence that other deputies had the same consistent performance issues as Mr. Darst that would make their conduct comparable.

Mr. Darst failed to identify a younger, similarly situated employee who was treated more favorably.

28

### g.    Ageist Remarks

"An employer's age-related comments can raise an inference that the employer acted on ageist animus." *Smith v. City of Union, Ohio*, 144 F.4th 867, 875 (6th Cir. 2025). Courts "gauge how much weight to place on such statements" depending on the speaker's position in the employer's hierarchy and his influence over the decision, whether the statement was made during the decisionmaking process, the purpose and content of the statement, and whether the statement buttresses other evidence of pretext. *Id.*; *see also Ercegovich*, 154 F.3d at 357. Statements "by non-decision makers or statements by decision makers unrelated to the decisional process itself cannot suffice to satisfy the plaintiff's burden of demonstrating animus." *Rowan*, 360 F.3d at 550.

Start with the remarks of other deputies. Although the deputies frequently mocked Mr. Darst because of his age, their ageist remarks offer minimal probative value because they were low-level employees who had no connection to his termination. *Cf. Williard v. Huntington Ford, Inc.*, 952 F.3d 795, 813 (6th Cir. 2020) (statements from supervisors evincing a "strong bias against older workers and a desire to see [plaintiff] leave" due to his age served as "additional evidence of pretext"). Nor is there any evidence that Sheriff Fitch was aware of these remarks, so it cannot be said that the deputies' ageist animus influenced Sheriff Fitch's decision.

Although Sheriff Fitch's remarks are more probative because he is the decisionmaker, none of his statements had any connection to the termination

29

decision. Still, the lack of direct nexus between Sheriff Fitch's remarks and Mr. Darst's termination does not make his remarks irrelevant to the pretext inquiry. The problem for Mr. Darst is that this is his only evidence of pretext. He must show that his age was the "but-for" cause of his termination, so he "cannot proceed if his termination was at least partly caused by [Defendants'] non-discriminatory reasons." *McNeal*, 117 F.4th at 896. On this point, the discriminatory remarks alone fail to call into question Defendants' reason for terminating him. Without other circumstantial evidence of pretext, they are insufficient to defeat summary judgment.

* * *

All told, this case exemplifies why courts take a flexible and pragmatic approach in evaluating circumstantial evidence of discrimination. Indeed, some evidence of pretext may still be insufficient for a plaintiff to create a jury question regarding the employer's true motive for the adverse action. *Cf. Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148 (2000) ("Certainly there will be instances where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational factfinder could conclude that the action was discriminatory."). No reasonable jury would conclude that age was the determinative reason for Mr. Darst's termination rather than his unsatisfactory probationary performance.

Defendants' Motion is **GRANTED** as to Counts I, II, and III. Because Mr. Darst has failed to raise a genuine dispute as to whether his termination was

discriminatory, his aiding and abetting claim against Sheriff Fitch also fails. Thus, Defendants' Motion is **GRANTED** as to Count IV.

## IV.     CONCLUSION

For the reasons stated herein, the Motion (ECF No. 42) is **GRANTED**.


**IT IS SO ORDERED.**

/s/ Sarah D. Morrison
**SARAH D. MORRISON, CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**